## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FIDELITY & DEPOSIT COMPANY OF MARYLAND,** : | **CIVIL ACTION NO. 1:08-CV-1219** |
| : | |
| : | **(Judge Conner)** |
| **Plaintiff** : | |
| : | |
| **v.** : | |
| : | |
| **WESTRA CONSTRUCTION, INC.,** : | |
| **and HOMETOWN BANK,** : | |
| : | |
| **Defendants** : | |

## MEMORANDUM

Plaintiff Fidelity & Deposit Company of Maryland ("F&D") brings this declaratory judgment action requesting a judicial pronouncement of its rights as a commercial surety that issued payment bonds on behalf of defendant Westra Construction, Incorporated ("Westra"). F&D contends that it is equitably subrogated to a portion of the proceeds of a bond claim levied by Westra against non-party United States Fidelity & Guaranty Company ("USF&G"). Westra, in turn, is bankrupt and indebted to defendant Hometown Bank for a sum in excess of $13.5 million. F&D and Hometown Bank both claim priority to the proceeds of the USF&G payment bond, which was the subject of a separate federal lawsuit. Presently before the court is F&D's motion for partial summary judgment. (Doc. 16.) For the reasons that follow, the motion will be granted.

## I.  Statement of Facts[1]

The instant dispute derives from a large-scale project to renovate the

Pennsylvania Turnpike's Central Administration Building in Lower Swatara

Township, Pennsylvania.  In April of 1999, the Pennsylvania Turnpike Commission

entered into a construction contract with CCI, a general contractor, to perform the

necessary renovations.  (Doc. 17 ¶ 1; Doc. 23 ¶ 1.)  CCI thereafter entered a

subcontract with Westra to complete specified "general trades construction work"

for a sum of $8,730,000.  (Doc. 17 ¶ 2; Doc. 23 ¶ 2.)  Under the provisions of the

subcontract, Westra was obligated to provide both performance and payment bonds

in order to guarantee its work on the project.[2]  (Doc. 17 ¶ 9; Doc. 23 ¶ 9.)  Westra

thus entered into a surety agreement with F&D, and F&D issued a performance

bond and a payment bond on behalf of Westra, as principal, in accordance with the

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the defendants, who are the nonmoving parties.  See infra Part II.

[2] A performance bond assures the obligee—in this case the general contractor—that if the principal fails to perform, the surety will discharge the principal's obligations either through performance or by paying the obligee the excess cost of performance.  See United States Fidelity & Guaranty Co. v. Feibus, 15 F. Supp. 2d 579, 581 n.2 (M.D. Pa. 1998) (defining "performance bond"). Payment bonds ensure that laborers, subcontractors, and suppliers are paid; thus, such bonds are issued for a specified financial sum.  See id.  In the instant matter, F&D issued a payment bond in the penal sum of $8,730,600.  (Doc. 17 ¶ 10; Doc. 23 ¶ 10.)

terms of the subcontract.[3]  (Doc. 17 ¶ 10; Doc. 23 ¶ 10.)  In addition, Westra executed

an agreement of indemnity, wherein it contracted to indemnify F&D "against any

and all liability for losses and/or expenses of whatsoever kind or nature" which

F&D may incur as surety.  (Doc. 17 ¶ 12; Doc. 23 ¶ 12.)  The indemnification

agreement also entitled F&D "to charge for any and all disbursements made by it in

good faith . . . under the belief that it is or was liable for the sums and amounts so

disbursed, or that it was necessary or expedient to make such disbursements,

whether or not such liability, necessity or expediency existed."[4]  (Doc. 17 ¶ 12; Doc.

23 ¶ 12.)

Between October of 1999 and February of 2000, Westra entered into at least

four sub-subcontracts with Novinger's, Incorporated and the Novinger Group,

---

[3] "A suretyship is a . . . three-party association where a creditor is entitled to performance of a contractual duty by the principal debtor or alternatively, if the debtor defaults, by the debtor's surety."  Reliance Ins. Co. v. Penn Paving, Inc., 734 A.2d 833, 836 (Pa. 1999).

[4] The indemnity agreement granted F&D the authority to settle claims adverse to its interest, as well.  Specifically, the agreement states that

> The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

(Doc. 17 ¶ 14; Doc. 23 ¶ 14.)

Incorporated (collectively, "Novinger"). (Doc. 17 ¶ 17; Doc. 23 ¶ 17.) Westra failed

to pay Novinger all the amounts owed under these sub-subcontracts, however, and

on August 8, 2001, counsel for Novinger delivered correspondence to F&D

requesting payment of $566,923.57. (Doc. 17 ¶ 18; Doc. 23 ¶ 18; Doc. 23, Ex. 7.)

Novinger's demand further indicated that the correspondence "constitute[d] the

notice required under paragraph 4.1 of the Payment Bond"—a provision which

required F&D to respond to an obligee's demand for payment within forty-five days

of receipt. (See Doc. 19 at 26; Doc. 23, Ex. 7.) F&D took no action on Novinger's

bond claim for approximately 110 days. (See Doc. 23 ¶ 23; Doc. 23, Ex. 8.) On

February 13, 2002, Novinger filed civil suit against Westra and F&D in the Dauphin

County Court of Common Pleas, seeking $566,000 plus interest, penalties, and

attorneys' fees. (Doc. 17 ¶¶ 19-20; Doc. 23 ¶¶ 19-20; Doc. 23, Ex. 10.)

Novinger's civil complaint consisted of two claims: the first asserted an action

on payment bond against both Westra and F&D, while the second stated an action

for breach of bond terms solely against F&D. (See Doc. 23, Ex. 10.) On November

18, 2002, the court entered an order granting Novinger partial judgment on the

pleadings. (See Doc. 19 at 31.) The Common Pleas court explained that "[b]ecause

of [F&D's] breach of . . . its payment bond, [F&D] is hereby precluded from

presenting any evidence in its defense at trial." (Id.) F&D thereafter moved for

clarification of the court's order and, on April 16, 2003, the court issued an order

stating that it was "this court's intent . . . to preclude Defendant Fidelity and

Deposit Company of Maryland from presenting evidence in its own defense." (Doc.

4

19 at 33.)  The parties agree that the above-described orders did not prevent Westra

from proffering its own defenses.  (Doc. 17 ¶ 29; Doc. 23 ¶ 29.)

After receipt of the April 16 order, F&D commenced efforts to amicably

resolve Novinger's claims.  (See Doc. 17 ¶ 30; Doc. 23 ¶ 17.)  On February 7, 2006,

F&D made an initial payment to Novinger of $202,486.68—a debt amount which

F&D asserts was undisputed by Westra.[5]  (See Doc. 17 ¶¶ 32-33.)  Westra neither

authorized or objected to payment of this sum.[6]  (See Doc. 17 ¶ 35; Doc. 23 ¶ 35.)

During continuing negotiations, Novinger sought an additional $390,676, a sum

which it eventually lowered to $290,000.  (See Doc. 17 ¶¶ 42-43; Doc. 23 ¶¶ 42-43.)

F&D concluded that Novinger was entitled to a portion of this demand and thus

agreed to pay $200,000 more to settle all claims.  (See Doc. 17 ¶ 44; Doc. 23 ¶ 44.)

Defendants acknowledge that F&D's pursuit of an amicable resolution to the

---

[5] Westra denies that it made such a concession.  (See Doc. 23 ¶¶ 32-33.)
However, F&D derived this dollar amount from discovery documents completed by
Westra during the Novinger litigation.  On September 12, 2003, Westra served its
answers to Novinger's interrogatories.  (Doc. 19 at 35-46.)  Westra was asked to set
forth what *it* alleged were the correct amounts due and, in response, *Westra* stated
that the balance due amounted to $202,486.68.  (See Doc. 19 at 39.)  Westra now
argues that it "did not admit that the balances were currently owed since Westra
was taking the position that it had certain defenses to Novinger's claim."  (Doc. 23
¶ 32.)  While Westra's position is not unsupported by the record evidence, the
instant matter concerns F&D's good faith efforts to settle an outstanding claim.
That F&D paid a debt which Westra seemingly conceded was owed is simply
evidence that F&D proceeded reasonably.

[6] Westra went out of business in July 2005 and therefore it technically lacked
the capacity to object to F&D's payment.  (See Doc. 23 ¶ 35.)  Westra's secured
creditor, Hometown Bank, was notified on March 6, 2006 of F&D's payment.  (Id.)
Counsel for Hometown Bank did not object to F&D's payment at this time.  (See
id.)

5

Novinger lawsuit—and its cash settlement thereof—were actions taken in good faith. (Doc. 17 ¶ 54; Doc. 23 ¶ 54.)

In a separate matter relating to the same construction project, Westra claimed that it was owed $900,000 from USF&G, surety for the project's general contractor. (See Doc. 17 ¶ 62; Doc. 23 ¶ 62.) Westra filed suit before the undersigned against USF&G on May 21, 2003, and the litigation settled in the fall of 2009. (See Westra Constr., Inc. v. United States Fidelity & Guar. Co., No. 1:03-CV-0833 (M.D. Pa.), Dkt. Nos. 1, 117.) F&D herein contends that it is equitably subrogated to the proceeds of the USF&G payment bond claim up to the amount of $402,486.68, which is the sum total paid by F&D to settle the Novinger lawsuit. Alternatively, F&D asserts that the terms of the indemnity agreement expressly permitted it to settle the Novinger claims in good faith. Westra does not question F&D's entitlement to a portion of the USF&G payment bond claim, but argues that F&D is due only the amount Westra actually owed Novinger. According to Westra, F&D essentially overpaid to settle the litigation and it is not entitled to recoup any portion of this overpayment.

On June 27, 2008, F&D commenced this suit by filing a complaint for declaratory judgment against Westra and Hometown Bank. (See Doc. 1.) In defendants' answer, Hometown Bank averred that it was Westra's secured lender, and thus entitled to priority over F&D with respect to any recovery obtained from USF&G. Defendants further asserted that even if F&D were equitably subrogated to Westra's rights against the USF&G bond, "it is only subrogated to the amount

that Westra actually owed Novinger, not the amount F&D paid Novinger." (Doc. 8 at 11.) On January 15, 2009, F&D moved for partial summary judgment, seeking to preclude defendants from presenting evidence regarding the "amount actually owed" to Novinger under the sub-subcontracts with Westra. (See Doc. 16; see also Hr'g Tr. at 32.[7]) This motion has been fully briefed and orally argued, and is now ripe for disposition.

## II.     **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmovant on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

---

[7] The court heard oral argument on the motion for partial summary judgment on May 7, 2009. Citations to the May 7, 2009 hearing transcript are abbreviated throughout as "Hr'g Tr."

## III.    **Discussion**[8]

The present motion seeks judicial resolution of the central affirmative

defense raised by Westra and Hometown Bank: namely, that F&D is entitled to

recoup only the amount of the USF&G payment bond claim which Westra actually

owed Novinger under the sub-subcontracts.[9]  Defendants argue that the price paid

to settle the Novinger dispute—$402,486.68—was substantially more than Westra

actually owed.  According to defendants, F&D was willing to overpay in part

because it had been precluded by court order from defending against Novinger's

suit in the Common Pleas Court.  This oversight purportedly exposed F&D to

greater liability were the suit to proceed to trial.

F&D tendered payment to Novinger in its role as Westra's surety.  As the

Supreme Court has explained, "sureties compelled to pay debts for their principal

---

[8] Jurisdiction over the instant action is based on diversity of citizenship, see 28 U.S.C. § 1332, which in this case requires the court to apply Pennsylvania law to the parties' substantive claims.  See Norfolk S. Ry. Co. v. Basell USA, Inc., 512 F.3d 86, 91-92 (3d Cir. 2008).  Neither party disputes the application of Pennsylvania state law to this matter.  Accordingly, decisions of the Pennsylvania Supreme Court are binding precedent upon this court, while Pennsylvania Superior Court decisions will be treated as persuasive precedent.  See State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 107 n.2 (3d Cir. 2009).

[9] F&D claims that defendants are asserting a "volunteer defense."  (See Doc. 20 at 9-14.)  A volunteer is one that has no legal or moral interest to protect, yet nonetheless pays the debt of another.  Kaiser v. Old Republic Ins. Co., 741 A.2d 748, 754 (Pa. Super. Ct. 1999).  In such circumstances, the volunteer is not entitled to subrogation.  Id.  Defendants claim that they have not raised a volunteer defense.  (See Hr'g Tr. at 32-33.)  Instead, defendants argue that F&D overpaid Novinger as a result of its mishandling of the payment bond claim.  In this fashion, defendants acknowledge that F&D acted under a legal compulsion to perform, but contend that the compulsion was in part due to its own negligence.

have been deemed entitled to reimbursement even without a contractual promise [to do so]." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136 (1962). "Under the common law, equity generally implies a right to indemnification in favor of a surety only when the surety pays off a debt for which his principal is liable." United States Fidelity & Guar. Co. v. Feibus, 15 F. Supp. 2d 579, 583 (M.D. Pa. 1998) (quoting Fidelity & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983) (applying Pennsylvania law)), aff'd, 185 F.3d 864 (3d Cir. 1999). When an express indemnification agreement exists, however, a "surety is entitled to stand upon the letter of the contract." Id. at 583 (quoting Bristol Steel, 722 F.2d at 1163).

By the terms of an express contract, Westra agreed to indemnify F&D against any loss it incurred as surety. "Indemnity agreements are interpreted in accordance with general principles of contract law," IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 317 (3d Cir. 2006), and here, neither party contends that the language of the indemnity agreement is unclear. Westra agreed to indemnify F&D against any disbursements made in good faith on the basis that Westra may be liable for the payments. (See Doc. 17 ¶ 12; Doc. 23 ¶ 23.) What is more, Westra granted F&D the express right to compromise and settle any claim unless Westra timely objected and deposited appropriate collateral. (See Doc. 17 ¶ 14; Doc. 23 ¶ 14.) It is undisputed that F&D settled the Novinger claims in good faith, and that Westra did not object to F&D's efforts to do so.[10] In short, F&D's

---

[10] In addition, the final settlement amount was over $150,000 less than Novinger's initial demand.

9

actions were clearly authorized by the express terms of the indemnification agreement.

Even if the indemnification agreement did not exist, however, F&D would be entitled to reimbursement under the doctrine of equitable subrogation. "Subrogation is an equitable doctrine involving the right of legal substitution, and may take place with or without contractual agreement between parties." High-Tech-Enters. v. Gen. Accident Ins. Co., 635 A.2d 639, 642 (Pa. Super. Ct. 1993); see also Pearlman, 371 U.S. at 136 n.12 (explaining that the right of subrogation is a "creature of equity" and "is independent of any contractual relations between the parties" (internal quotations omitted)). This principle places the "ultimate burden of a debt upon the one who in good conscience ought to pay it, and is generally applicable when one pays out of his own funds a debt or obligation that is primarily payable from the funds of another." Employers Ins. of Wausau v. Pennsylvania, 865 A.2d 825, 834 (Pa. 2004) (quoting High-Tech-Enters., 635 A.2d at 642)). F&D and Westra executed a written surety agreement, and defendants concede that F&D is entitled to some amount of subrogation, (see Doc. 24 at 15). Defendants simply complaint that the amount proffered was in excess of that which Westra actually owed.

As the Third Circuit Court of Appeals has explained, "[t]he subrogation right is an expansive one," and when a surety has paid claims, it succeeds both to the rights of the principal and obligee. Ram Constr. Co. v. Am. States Ins. Co., 749 F.2d 1049, 1055 (3d Cir. 1984). Furthermore, sureties may extinguish a financial demand

in order to protect their own rights and to avoid costly litigation.  See Dominski v.

Garrett, 419 A.2d 73, 76-77 (Pa. Super. Ct. 1980); Beck v. Beiter, 22 A.2d 90, 93-94

(Pa. Super. Ct. 1941); see also In re Air Crash Disaster, 86 F.3d 498, 549-50 (6th Cir.

1996); Liberty Mut. Ins. Co. v. Picco & Sons Contracting Co., Inc., No. 05 Civ. 217

(SCR), 2008 WL 190310, at *7 (S.D.N.Y. Jan. 16, 2008); In re Allegheny Health, Educ.

& Research Found., 312 B.R. 58, 70 (Bankr. W.D. Pa. 2004).  When a surety settles

an outstanding claim for payment, it is typically entitled to full reimbursement.  See

Pearlman, 371 U.S. at 141.  In the instant matter, F&D was exposed to a liability in

excess of $566,000 from the moment Novinger filed suit.  Novinger's demand

derived from its contract dispute with Westra.  Although F&D failed to respond

timely to Novinger's bond payment claim, such failure did not alter the nature of

the underlying dispute or the amount to which Novinger was asserting an

entitlement.  F&D's interest in limiting its financial exposure was compelling, and it

settled Novinger's claims for significantly less than the $566,000 which Novinger

demanded; F&D is therefore equitably subrogated to the proceeds of the USF&G

payment bond claim up to the amount of its outlay—$402,486.68.

## IV. Conclusion

For the foregoing reasons, the court shall grant F&D's motion for partial summary judgment. Accordingly, defendants shall be precluded from raising as an affirmative defense the contention that F&D is only entitled to the amount which Westra actually owed Novinger in the underlying contract dispute.

An appropriate order follows.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      May 10, 2010

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FIDELITY & DEPOSIT COMPANY** | : | **CIVIL ACTION NO. 1:08-CV-1219** |
| **OF MARYLAND,** | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WESTRA CONSTRUCTION, INC.,** | : | |
| **and HOMETOWN BANK,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 10th day of May, 2010, upon consideration of the motion

(Doc. 16) for partial summary judgment, filed by plaintiff Fidelity & Deposit

Company of Maryland ("F&D"), and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1.   The motion (Doc. 16) for partial summary judgment is GRANTED.
     See FED. R. CIV. P. 56(c).  Defendants shall not be permitted to offer as
     an affirmative defense the contention that F&D paid non-party
     Novinger's, Incorporated and the Novinger Group, Incorporated an
     amount in excess of that which defendant Westra Construction,
     Incorporated actually owed under several sub-subcontracts entered
     between Westra and Novinger.

2.   Affirmative defenses five, six, seven, and eight are STRICKEN from
     defendants' answer (Doc. 8) to the complaint.

3.   A revised pretrial and trial schedule shall issue by future order of
     court.


                                  S/ Christopher C. Conner
                                  CHRISTOPHER C. CONNER
                                  United States District Judge